| | |
|---|---|
| ROBERT W. NEAL,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA, et al.,<br><br>Defendants. | No. 2: 18-cv-1259 KJM KJN P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

I. Introduction

Plaintiff is proceeding without counsel with this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's second amended complaint. (ECF No. 19.)

At the outset, the undersigned observes that plaintiff appears to bring a class action. On January 29, 2019, the Honorable Kimberly J. Mueller denied plaintiff's motion for class certification. (ECF No. 21.) Accordingly, plaintiff's claims made on behalf of a class are disregarded.

A. Claims for Injunctive Relief

Plaintiff filed this action when he was incarcerated. The second amended complaint seeks monetary, declaratory and injunctive relief. (ECF No. 19 at 16-18.) After plaintiff filed the second amended complaint, he filed a notice of change of address indicating that he is no longer incarcerated. (ECF No. 20.)

1

Because plaintiff is no longer incarcerated, his claims for injunctive relief, regarding conditions of confinement, should be dismissed as moot. See Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995) (an inmate's request for injunctive relief concerning the prison where he is incarcerated becomes moot once he is released from prison).

B. Plaintiff's Claims

The second amended complaint contains six claims. The original complaint contained claims very similar, if not identical, to claims 1-4 in the second amended complaint. On August 29, 2018, the undersigned dismissed the original complaint with leave to amend. (ECF No. 15.) In the August 29, 2018 order, the undersigned discussed the pleading defects of plaintiff's claims. (Id.)

On September 27, 2018, the undersigned dismissed the first amended complaint with leave to amend because it did not contain a short and plain statement of the claims. (ECF No. 18.) In the September 27, 2018 order, the undersigned did not address the merits of the claims raised in the first amended complaint. (Id.)

As discussed herein, the second amended complaint does not cure the pleading defects addressed by the undersigned in the August 29, 2018 order with respect to claims 1-4.

1. Claim 1: Alleged Violation of the Equal Protection Clause

In claim one, plaintiff alleges that he has been denied access to the same "tools" as "free citizens." (ECF No. 19 at 2.) Plaintiff alleges that he has been denied access to 1) whiteout tape to cover up document errors; 2) red pens for editing drafts; 3) paper clips; 4) access to criminal case files; 5) other relevant case information and evidence necessary to prosecute habeas corpus petitions or any other type of litigation; 6) government web sites; and 7) word processors.

The Equal Protection Clause requires the State to treat all similarly situated people equally. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). To prevail on an Equal Protection claim brought under § 1983, plaintiff must allege facts plausibly showing that the defendants acted with an intent or purpose to discriminate against him based upon membership in a protected class. Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005). Plaintiff may also state an Equal Protection claim alleging that similarly situated

individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02 (2008).

In claim one, plaintiff has not stated a potentially colorable Equal Protection claim for the following reasons. First, prisoners are not a protected class. While prisoners can be members of a protected class by virtue of their race, religion, or other recognized protected status, the fact that plaintiff is a prisoner does not itself qualify him as a member of a protected class. See Webber v. Crabtree, 158 F.3d 460-461 (9th Cir. 1988); see also Pryor v. Brennan, 914 F.2d 921, 923 (7th Cir. 1990) ("Prisoners do not constitute a suspect class."); Moss v. Clark, 886 F.2d 686, 690 (4th Cir. 1989) ("The status of incarceration is neither an immutable characteristic, nor an invidious basis of classification." (internal citations omitted)).

Second, prisoners are not similarly situated to people who are not incarcerated. See Hrbek v. Garrier, 787 F.2d 414, 417 (8th Cir. 1986) (prisoners and non-prisoners are not similarly situated). For these reasons, the undersigned finds that plaintiff has not stated a potentially colorable Equal Protection Claim.

2. Claim 2: Alleged Denial of Access to Education, Rehabilitation and Early Release Opportunities

Plaintiff alleges that he has been denied access to higher education, rehabilitation and early release opportunities. (ECF No. 19 at 6.) Plaintiff alleges that defendants fail to provide him with the necessary educational materials to earn early release including access to college programs and e-readers. (Id.) Plaintiff alleges that he does not earn enough money from his prison job to enroll in community college. (Id. at 6-8.)

There is no constitutional right to education and rehabilitation in prison. Rhodes v. Chapman, 452 U.S. 337, 348 (1981) (deprivation of rehabilitation and educational programs does not violate Eighth Amendment). For this reason, plaintiff's claim that he was denied access to higher education, rehabilitation and early release opportunities is without merit.

In claim two, plaintiff also alleges that he was denied the right to acquire property through on-line vendors. (ECF No. 19 at 7.) Plaintiff alleges that his inability to purchase property from on-line vendors interferes with his right to education, rehabilitation and early release. (Id.)

Because plaintiff has no constitutional right to education or rehabilitation, his alleged inability to purchase on-line products in order to pursue education and rehabilitation does not state a potentially colorable constitutional claim.

Plaintiff may also be claiming that his inability to access on-line vendors violates his right to due process. While the Due Process Clause protects persons against deprivations of life, liberty and property without due process of law, it does not guarantee prisoners a right to purchase property from on-line vendors, i.e. outside vendors, or to purchase property at all. See Torres v. Cate, 2013 WL 1097997 at *2 (N.D. Cal. 2013). Accordingly, plaintiff's claim that his denial of access to on-line vendors violates his right to due process is without merit.

### 3. Claim 3: Alleged Denial of Right to Vote

In claim 3, plaintiff alleges that he was denied his right to vote. (ECF No. 19 at 8.)

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated; and 2) that the alleged violation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

The Constitution allows a state to exclude from the franchise those convicted of a crime, including those who have completed their sentences and paroles. Richardson v. Ramirez, 418 U.S. 24, 56 (1974). Under California law, persons imprisoned or on parole for the conviction of a felony are not entitled to register to vote. Cal. Elec. Code § 2101. Plaintiff was, presumably, imprisoned based on a felony conviction. Plaintiff is, presumably, now on parole for the conviction of a felony. Accordingly, his claim that his right to vote has been denied does not state a potentially colorable claim for relief.

### 4. Claim 4: Alleged Denial of Right to Access the Courts

*Legal Standard*

Inmates have a fundamental constitutional right of access to the courts and prison officials may not actively interfere with plaintiff's right to litigate. Lewis v. Casey, 518 U.S. 343, 346 (1996); Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009). Courts have traditionally differentiated between two types of access claims, those involving the right to affirmative

4

assistance, and those involving an inmate's right to litigate without active interference. Silva v. Di Vittorio, 658 F.3d 1090, 1102 (9th Cir. 2011), overruled on other grounds as stated by Richey v. Dahne, 807 F.3d 1202, 1209 n. 6 (9th Cir. 2015).

The right to assistance is limited to direct criminal appeals, habeas petitions, and civil rights actions. Lewis, 518 U.S. at 354. Prisoners also have the right to pursue claims that have a reasonable basis in law or fact without active interference by prison officials. Silva, 658 F.3d at 1103–04 (finding that repeatedly transferring the plaintiff to different prisons and seizing and withholding all of his legal files constituted active interference where the prisoner alleged cases had been dismissed). This right forbids state actors from erecting barriers that impede the right of access to the courts by incarcerated persons. Silva, 658 F.3d at 1102 (internal quotations omitted).

In both types of access to the courts claims, the defendant's actions must have been the proximate cause of actual prejudice to the plaintiff. Silva, 658 F.3d at 1103–04. To state a viable claim for relief, a plaintiff must show that he suffered an actual injury, which requires "actual prejudice to contemplated or existing litigation" by being shut out of court. Nevada Dep't of Corr. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing Lewis, 518 U.S. at 348, 351); Christopher v. Harbury, 536 U.S. 403, 415 (2002); Phillips, 588 F.3d at 655. The Ninth Circuit explained this actual injury requirement as follows herein:

> [T]he Supreme Court has cautioned that despite some past imprecision in its articulation of the protection, access-to-courts rights do not exist in an "abstract, freestanding" form. Lewis, 518 U.S. at 351. Instead, they are tethered to principles of Article III standing. See id. (remarking that "actual injury is apparent on the face of almost all the opinions in the 35–year line of access-to-courts cases"). [footnote omitted.] For there to be a judicially cognizable injury, "the party before [the court] must seek a remedy for a personal and tangible harm." Hollingsworth v. Perry, 133 S.Ct. 2652, 2661 (2013) (emphasis added); see also New York v. Ferber, 458 U.S. 747, 767 (1982) (describing "the personal nature of constitutional rights" as a "cardinal principle[ ] of our constitutional order").

See Blaisdell v. Frappiea, 729 F.3d 1237, 1244 (9th Cir. 2013) (one plaintiff cannot vicariously assert an access-to-the court claim on behalf of another).

////

*Discussion*

Plaintiff alleges that defendants denied him access to the courts in the following ways: 1) insufficient numbers of computers in the law libraries for conducting legal research; 2) frequent law library closures; 3) small or inadequate law library space; 4) prison overcrowding that impacts law library access; and 5) prison officials misconstruing the regulations regarding inmate law library access. (ECF No. 19 at 9-12.)

Plaintiff does not allege that he suffered any actual prejudice as a result of the five conditions described above. For example, plaintiff does not allege that frequent law library closures actually prejudiced any pending or contemplated litigation. While plaintiff generally alleges that inadequate access to computer research "caused all of [his] past-present and future habeas corpus petitions and filing[s] to fail or to be filed late," (see id. at 10), plaintiff does not cite a specific habeas petition that was actually denied due to inadequate access to computer research or the law library. Plaintiff does not allege that he was "shut out of court" as a result of the alleged deprivations.

For the reasons discussed above, plaintiff has not stated a potentially colorable claim alleging denial of right to access the courts.

    5. Claim 5: Alleged Failure to Comply with Armstrong[1]

Plaintiff alleges that defendants have failed to provide the "reasonable ADA accommodations" they agreed to provide in Armstrong. (Id. at 12-13.)

Armstrong is a class action filed in 1994 by "[a] certified class of all present and future California state prison inmates and parolees with disabilities [who] sued California state officials in their official capacities, seeking injunctive relief for violations of the RA [Rehabilitation Act] and the ADA [Americans with Disabilities Act] in state prisons." See Armstrong v. Wilson, 124 F.3d 1019, 1021 (9th Cir. 1997). In Armstrong, the Northern District of California found that defendants had violated the ADA and RA and entered a remedial order and injunction under which CDCR must evaluate its programs and develop remedial plans to remedy violations of the

---

[1] Claim five is identified as claim six in the second amended complaint. (ECF No. 19 at 12.)

ADA and RA while plaintiffs' monitor defendants' compliance. See Armstrong, 318 F.3d 965, 968 (9th Cir. 2003).

As discussed above, because plaintiff is no longer incarcerated, his claim that defendants are not in compliance with orders issued in Armstrong is moot. See Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995) (an inmate's request for injunctive relief concerning the prison where he is incarcerated becomes moot once he is released from prison).

Turning to plaintiff's claim for damages for alleged violations of the ADA and RA, to state a claim for violation of Title II of the ADA, a plaintiff must allege four elements:

> (1) [H]e is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056, 1060 (9th Cir. 2007); see also Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002); Duvall v. County of Kitsap, 260 F.3d 1124 (9th Cir. 2001).

Title II of the ADA was modeled after § 504 of the Rehabilitation Act and is thus analyzed under the same standard. Duvall, 260 F.3d at 1135-36. A state official acting in his official capacity may be a proper defendant pursuant to an ADA Title II claim. Miranda v. Kitzhaber, 328 F.3d 1181, 1187-88 (9th Cir. 2003); cf. Vinson v. Thomas, 288 F.3d 1145, 1148 (9th Cir. 2002) (affirming that plaintiffs cannot bring a claim against defendants in their individual capacities under Title II of the ADA).

To recover money damages under Title II of the ADA or § 504 of the RA, "a plaintiff must prove intentional discrimination on the part of the defendant." Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). "Intentional discrimination" means "deliberate indifference" which requires two prongs: "[(1)] knowledge that a harm to a federally protected right is substantially likely, and [(2)] a failure to act upon that likelihood." Duvall, 260 F.3d at 1139. The second prong is not satisfied if the failure to fulfill the duty to accommodate results from mere negligence. Id. Rather, there must be "an element of deliberateness." Id. In the

prison context, a plaintiff must show not only a violation, but also that the challenged policy is not reasonably related to the prison's legitimate penological interests. Pierce v. County of Orange, 526 F.3d 1190, 1216-17 (9th Cir. 2008).

Plaintiff's second amended complaint does not state potentially colorable claims for violation of the ADA and RA because plaintiff does not adequately identify his alleged disabilities. Plaintiff alleges that he suffers from "many disabilities," but does not identify them. (ECF No. 19 at 13.) Instead, plaintiff describes his disabilities as impacting his ability to write in a clear manner, and that he suffers from short term memory damage and other brain damage. (Id.) Plaintiff also alleges that his disabilities impact his ability to have a rational grip on reality and to learn and understand. (Id.)

While plaintiff has described the symptoms of his disabilities, he has not adequately identified the disabilities. For this reason, plaintiff's ADA and RA claims are dismissed. If plaintiff is claiming that his disability is brain damage, for example, he shall clarify this in a third amended complaint.

In the second amended complaint, plaintiff alleges that defendants violated the ADA and RA by not providing adequate electronic equipment for the creation of legal text and the necessary software in the law library to accommodate his disability. (Id. at 13.) Plaintiff alleges that he required access to a word processor to correct his errors. (Id. at 14.) Plaintiff alleges that his request for this equipment was denied at the California Institution for Men ("CIM"). (Id. 13.) Plaintiff alleges that at "ASP and CTF [plaintiff] was afforded zero ADA accommodations." (Id.)

The undersigned does not understand the relationship between the symptoms of plaintiff's alleged disabilities and his need for access to a word processor. If plaintiff suffers from brain damage that affects his ability to write clearly, causes him to suffer from short term memory loss and impacts his ability to learn and understand, it is not clear how access to a word processor would accommodate these conditions. If plaintiff files a third amended complaint, he shall discuss how access to a word process would accommodate his alleged disability.

In an abundance of caution, plaintiff is granted leave to amend with respect to his claim for damages based on alleged violations of the ADA and RA.

6. Claim 6: Alleged Failure to Train[2]

Plaintiff alleges that defendants' alleged failure to train their subordinate staff has resulted in the deprivations alleged in claims 1-4. (ECF No. 19 at 14-15.)

As discussed above, to state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated; and 2) that the alleged violation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Because plaintiff has not established any violation of his constitutional rights, his claims alleging that defendants failed to train their subordinate staff does not state a potentially colorable claim for relief.

C. Conclusion

The undersigned has spent considerable time screening plaintiff's complaints. Because it is clear that plaintiff cannot cure the pleading defects discussed above with respect to his claims brought pursuant to 42 U.S.C. § 1983, these claims should be dismissed. In an abundance of caution, plaintiff is granted leave to amend only with respect to his claim for damages based on alleged violations of the ADA and RA.

Accordingly, IT IS HEREBY ORDERED that plaintiff is granted thirty days to file an amended complaint with respect to his claim for damages based on alleged violation of the RA and ADA; failure to file a third amended complaint within that time will result in a recommendation of dismissal of this action; and

IT IS HEREBY RECOMMENDED that plaintiff's claims alleging violation of his constitutional rights, raised in the second amended complaint, be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that

---

[2] Claim six is identified as claim seven in the second amended complaint. (ECF No. 19 at 14.)

failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 22, 2019

*/s/ Kendall J. Newman*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Neal1259.ame(2)